CASE NO. 26-1866

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

BENJAMIN BIN CHOW,

*Plaintiff-Appellant*

v.

CANYON BRIDGE CAPITAL MANAGEMENT, LLC, HONG JOHN KAO,
HEBER RAYMOND BINGHAM, PETER CHIN KUO, CANYON BRIDGE
FUND I LP, CANYON BRIDGE CAPITAL PARTNERS LLC,

*Defendants-Appellees*

On Appeal from the United States District Court
for the District of Delaware
Case No. 1:22-cv-00947-JLH-SRF

BRIEF OF DEFENDANTS-APPELLEES
CANYON BRIDGE CAPITAL PARTNERS, LLC, CANYON BRIDGE FUND
I LP, HONG JOHN KAO, HEBER RAYMOND BINGHAM, AND PETER
CHIN KUO

| | |
|---|---|
| Adam R. Fox | Jesse L. Noa (#5973) |
| Jesse Taylor | Tyler E. Cragg (#6398) |
| Chassica Soo | POTTER ANDERSON & CORROON LLP |
| SQUIRE PATTON BOGGS (US) LLP | 1313 N. Market Street, 7th Floor |
| 555 South Flower Street | Wilmington, Delaware 19801 |
| 31st Floor | (302) 984-6000 |
| Los Angeles, California 90071 | |
| (213) 624-2500 | |

*Counsel for Defendants-Appellees*

## DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 3d Cir. L.A.R. 26.1.1 (2011), Defendants-Appellees Canyon Bridge Capital Partners, LLC, Canyon Bridge Capital Management, LLC, and Canyon Bridge Fund I, LP hereby state that they have no parent corporation, and that there are no publicly held companies that own 10% or more of their stock.[1]

*s/ Jesse L. Noa*
Jesse L. Noa (Del. Bar #5973)
Counsel for Defendant-Appellee

---

[1] Defendants-Appellees timely filed Corporate Disclosure Statements on April 30, 2026. ECF Nos. 7–9.

i

**TABLE OF CONTENTS**

Disclosure Statement...................................................................................................i

TABLE OF CONTENTS..........................................................................................ii

TABLE OF CITATIONS ........................................................................................ iv

INTRODUCTION ....................................................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................3

STATEMENT OF RELATED CASES .....................................................................4

STATEMENT OF THE CASE..................................................................................5

    I.    CHOW SIGNS TWO ENGAGEMENT LETTERS WITH JONES DAY CONFIRMING JONES DAY DOES NOT REPRESENT CHOW PERSONALLY....................................................................................5

    II.    CHOW COMMITS SECURITIES FRAUD AT CANYON BRIDGE. ..........................................................................................................6

    III.    CHOW'S UNLAWFUL CONDUCT AND CRIMINAL CONVICTION LEAD TO HIS REMOVAL FROM CANYON BRIDGE. ......................................................................................................7

    IV.    CANYON BRIDGE IS REDOMICILED TO THE CAYMAN ISLANDS. ..............................................................................................8

    V.    FACING FINANCIAL PRESSURE, CHOW INITIATES CIVIL LITIGATION SEEKING MILLIONS....................................................8

    VI.    RELEVANT PROCEDURAL POSTURE. .............................................10

SUMMARY OF ARGUMENT ...............................................................................13

ARGUMENT ...........................................................................................................14

    I.    STANDARD OF REVIEW..................................................................124

    II.    CHOW FAILS TO DEMONSTRATE ANY GENUINE FACTUAL DISPUTE ABOUT THE ALLEGED ATTORNEY-CLIENT RELATIONSHIP BETWEEN HIM AND KAO....................146

    III.    CHOW'S CLAIMS AGAINST KAO FOR CONSTRUCTIVE FRAUD AND BREACH OF FIDUCIARY DUTY ARE TIME-BARRED. ...................................................................................................22

IV.   CHOW'S BREACH OF FIDUCIARY DUTY CLAIM MISAPPREHENDS THE DUTY OWED AND HONORED BY DEFENDANTS-APPELLEES KAO, KUO AND BINGHAM. .............27

V.   THE REMAINING CLAIMS ALSO WARRANTED SUMMARY JUDGMENT.................................................................................30

    A. Chow's Claims For Unjust Enrichment And Breach Of The Implied Covenant Of Good Faith Fail As A Matter Of Law. ..............30

    B. Chow's Claims For Statutory Fraudulent Transfer And Common Law Fraudulent Transfer Fail As A Matter Of Law. ..........33

       i.   Chow Fails To Show A Genuine Dispute Regarding A Transfer. ...............................................................................33

       ii.   Chow Fails To Show A Genuine Dispute About Fraudulent Intent. .....................................................................34

       iii.   Chow Fails To Show A Genuine Dispute That He Is A Creditor. ..................................................................................35

    C. The District Court did not Commit Plain Error in Granting Summary Judgment on Chow's Breach of Contract Claim.................35

VI.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED CHOW'S RULE 56(D) REQUEST. ......................38

CONCLUSION .......................................................................................41

CERTIFICATE OF SERVICE ................................................................42

CERTIFICATE OF COMPLIANCE ........................................................43

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................12

*Arias v. Brenneman*,
No. 22-3458, 2023 WL 8646268 (3d Cir. 2023)................................38

*Arnett v. Webster*,
658 F.3d 742 (7th Cir. 2011) ..........................................................13

*Bell v. City of Phila.*,
275 F. App'x 157 (3d Cir. 2008) ......................................................30

*Brightwell v. Lehman*,
637 F.3d 187 (3d Cir. 2011) ..............................................11, 12, 34

*Brown v. Crawford*,
906 F.2d 667 (11th Cir. 1990) ........................................................13

*Cadet v. First Liberty Ins. Corp.*,
No. 1:20-CV-3159-MLB, 2022 WL 671546
(N.D. Ga. Mar. 7, 2022)..................................................................15

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........................................................21

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
82 F.3d 69 (3d Cir. 1996) ....................................................12, 17, 20

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012) ......................................................26, 27

*Fink v. Montes*,
44 F. Supp. 2d 1052 (C.D. Cal. 1999)..............................................18

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981)........................................................................35

iv

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
    482 F.3d 247 (3d Cir. 2007) ........................................................................22

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
    2014 WL 2738224 (D.N.J. June 17, 2014) ...................................................36

*Frady v. New Peaks LLC*,
    No. 23-cv-0158-AGS-JLB, 2024 WL 1023024
    (S.D. Cal. Mar. 8, 2024) ..............................................................................31

*Freedman v. Redstone*,
    753 F.3d 416 (3d Cir. 2014), *overruled on other grounds by In re
    Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250 (3d
    Cir. 2024) (en banc) .....................................................................................27

*Hart v. Electronic Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013) .........................................................................13

*Jackson v. Bank of New York*,
    62 F. Supp. 3d 802 (N.D. Ill. 2014) .............................................................15

*Johnson v. Orr*,
    776 F.2d 75 (3d Cir. 1985) ...........................................................................11

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*,
    18 Cal. 4th 739 (1998) ............................................................................22, 23

*Jorjani v. N.J. Instit. of Tech.*,
    151 F.4th 135 (3d Cir. 2025) ........................................................................11

*Klassen v. Allegro Dev. Corp.*,
    2013 WL 5967028 (Del. Ch. Nov. 7, 2013) .................................................25

*Kline v. First Western Gov't Sec.*,
    24 F.3d 480 (3d Cir. 1994) ...........................................................................21

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) .......................................................22, 25, 28, 34

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009) ......................................................................29

v

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
26 F.3d 375 (3d Cir. 1994) ...................................................................29, 31

*Lee v. Hanley*,
61 Cal. 4th 1225 (2015) .............................................................................21

*Lunderstadt v. Colafella*,
885 F.2d 66 (3d Cir. 1989) ........................................................................38

*Mala v. Crown Bay Marina, Inc.*,
704 F.3d 239 (3d Cir. 2013) ......................................................................12

*Murphy v. Millenium Radio Grp. LLC*,
650 F.3d 295 (3d Cir. 2011) ......................................................................13

*N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*,
930 A.2d 92 (Del. 2007) .......................................................................25, 26

*Radich v. Goode*,
886 F.2d 1391 (3d Cir. 1989) ....................................................................38

*Responsible Citizens v. Superior Ct.*,
16 Cal. App. 4th 1717 (1993) ....................................................................17

*RSL Commc'ns PLC v. Bildirici*,
649 F. Supp. 2d 184 (S.D.N.Y. 2009), *aff'd sub nom. RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 F. App'x 337 (2d Cir. 2011)...........................................................................................17

*S.E.C. v. Hughes Cap. Corp.*,
124 F.3d 449 (3d Cir. 1997) ..........................................................15, 16, 32

*Schiavone Constr. Co. v. Time, Inc.*,
847 F.2d 1069 (3d Cir. 1988) ....................................................................17

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) ..........................................................13, 36, 38

*Shock v. Baker*,
663 F. App'x 248 (3d Cir. 2016) ...............................................................12

*SodexoMAGIC, LLC v. Drexel Univ.*,
 24 F.4th 183 (3d Cir. 2022) ...................................................................12

*Sprengel v. Zbylut*,
 241 Cal. App. 4th 140 (2015) ................................................................21

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*,
 No. C 08-01780 MHP, 2008 WL 4450328
 (N.D. Cal. Sept. 29, 2008) ....................................................................31

*Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*,
 490 F. App'x 492 (3d Cir. 2012) ...........................................................13

*Toffel v. Nationwide Mut. Ins. Co.*,
 No. 2:15-CV-01669-KOB, 2017 WL 3425532
 (N.D. Ala. Aug. 9, 2017) ................................................................23, 24

*Travelers Indem. Co. v. Pauline*,
 No. 1:07-CV-00538, 2008 WL 1774034 (M.D. Pa. Apr. 15, 2008) ...........22, 28

*Tundo v. Cnty. of Passaic*,
 923 F.3d 283 (3d Cir. 2019) ..................................................................11

*United States v. Chow*,
 993 F.3d 125 (2d Cir. 2021) ....................................................5, 6, 7, 18

*United States v. Chow*,
 No. 1:17-cr-00667-GHW (S.D.N.Y.) .......................................................5

*Village Nurseries v. Greenbaum*,
 101 Cal. App. 4th 26 (2002) ..................................................................23

*Zenith Ins. Co. v. O'Connor*,
 148 Cal. App. 4th 998 (2007) ................................................................18

**Statutes**

6 Del. C. § 18-1101(c) ...........................................................................30

28 U.S.C. § 1291 ...................................................................................35

Cal. Civ. Code § 3439.01(b) & (c)............................................................33

Cal. Civ. Code § 3439.04(a) ...................................................................31

California Code of Civil Procedure § 340.6(a)...................................................20, 24

Cayman Companies Act § 202(3)(g)(i) ....................................................................32

**Other Authorities**

Fed. R. Civ. P. 56(a)...............................................................................................12

Fed. R. Civ. P. 56(d) ......................................................................................*passim*

**INTRODUCTION**

This case arises from the departure of Plaintiff-Appellant Benjamin "Bin" Chow from a private equity fund he helped found and on whose board he had served, following his conviction for securities fraud. It is undisputed that Chow's business partners, Defendants-Appellees Hong John Kao, Peter Kuo, and Heber Raymond Bingham supported Chow emotionally and financially during his investigation, trial, and immediately following the verdict. Nevertheless, business realities that manifested as extreme pressure from investors required Chow's separation from the investment fund. Indeed, Chow voluntarily signed resignation letters, and the SEC later independently barred Chow from legally associating with any investment advisor as a consequence of his criminal misconduct.

Years after his resignation, in the midst of Chow's failure to honor his restitution obligations to the government, Chow brought the underlying action to seek money from his former business partners and the entities they had formed together. They owed him nothing. Indeed, he admitted during his criminal proceedings that he was indebted to them for having advanced millions of dollars for his defense. So Chow concocted a new scheme: accuse his former partners of having wrongly terminated him and improperly redomiciled the entities they had formed to deprive him of unspecified assets.

Following early motion practice and some discovery, Chow's counsel withdrew. Chow elected to continue *pro se* and admitted in his deposition to using generative artificial intelligence ("A.I.") in prosecuting his claims. Upon learning about this tactic, opposing counsel cautioned Chow about the risks of doing so. When discovery closed, Defendants-Appellees moved for summary judgment. Following full briefing of the motion, the United States Magistrate Judge conducted an oral hearing and then entered a thorough, written Report and Recommendation to enter summary judgment rejecting Chow's claims. In addition to finding no merit to any of those claims, the trial court took special note of several hallucinated citations resulting from Chow's persistent use of A.I. Chow timely filed objections that the United States District Judge overruled in adopting the Report and Recommendation.

Chow's appeal does little more than reiterate the flawed arguments he raised below and introduce new (but also flawed) arguments that it would be improper for this Court to consider. It should accordingly affirm the grant of summary judgment.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court properly granted summary judgment as to Plaintiff Benjamin "Bin" Chow's claims following extensive discovery, oral argument, and *de novo* review of the Magistrate Judge's Report and Recommendation.

2.    Whether the District Court committed plain error in granting Chow's breach of contract claim, given his failure to contest the recommendation offered by the Magistrate Judge.

3.    Whether Chow may revise the factual and legal basis of his claims on appeal, or if he has instead waived those arguments not presented below.

4.    Whether the District Court abused its discretion in denying Chow's request for Federal Rule of Civil Procedure 56(d) relief, presented for the first time months after the close of all discovery, that does not satisfy the clear criteria set forth by the Third Circuit for granting such relief.

## STATEMENT OF RELATED CASES

Pursuant to 3d Cir. L.A.R. 28.1(a)(2) (2011), Defendants-Appellees state that this case has not been before this Court previously and that Defendants-Appellees are not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

**I.     Chow signs two engagement letters with Jones Day confirming Jones Day does not represent Chow personally.**

In 2016, Chow worked for a company known as China Reform Fund Management Company, Ltd. ("China Reform"). JA508. It retained Jones Day, including the managing partner of its Beijing office—Defendant-Appellee Kao—to assist in "China Reform's proposed acquisition of Lattice Semiconductor Corporation," and designated Chow its primary contact for this purpose. JA1767; *see also* JA11 & JA1770. Chow accordingly signed the engagement letter, which explained that "Jones Day is not representing any owner [or] employee . . . of China Reform." JA1767.

To facilitate China Reform's acquisition of Lattice, Chow incorporated Canyon Bridge Capital Partners, Inc. on behalf of China Reform. JA10. He later directed Jones Day to convert Canyon Bridge Partners, Inc. into Canyon Bridge Capital Partners, LLC, a limited liability company. JA10–11. At Chow's direction, Jones Day also formed a number of other entities using the name "Canyon Bridge" to achieve the goals established by China Reform. JA11.

In October 2016, at Chow's invitation, Kao resigned from Jones Day and became a shareholder and partner of Canyon Bridge, assuming the General Counsel role for the new enterprise. *Id*. Chow also invited to join Canyon Bridge Defendants-Appellees Kuo and Bingham, both experienced businessmen with a deep familiarity

5

in the field of semiconductors and technology investments. *Id.* Having reorganized and restructured the Canyon Bridge investment vehicle, in December 2016, Chow executed another written engagement agreement on its behalf with Jones Day. *Id.*, JA1014. As before, the engagement letter once again explained that Jones Day was not representing any individual associated with Canyon Bridge, including Chow. JA1014.

## II.    Chow commits securities fraud at Canyon Bridge.

The full background of Chow's crimes is set forth in *United States v. Chow*, 993 F.3d 125 (2d Cir. 2021). In relevant part, while Chow was spearheading the acquisition of Lattice, first by China Reform, and then by Canyon Bridge, he began "communicating frequently" with a former colleague, Michael Yin, about the acquisition. *Id.* at 132. As a direct consequence of these tips, Yin purchased millions of shares of Lattice immediately prior to the public announcement of the Lattice acquisition on November 3, 2016. *Id.* at 133.

The Department of Justice investigated and then indicted Chow in September 2017 for sharing material, nonpublic information about Canyon Bridge's potential acquisition of Lattice. JA12; *see also United States v. Chow*, No. 1:17-cr-00667-GHW (S.D.N.Y.). Following a jury trial, in April 2018 the United States District Court for the Southern District of New York convicted Chow for securities fraud, conspiracy to commit securities fraud, and insider trading. JA12. The Second Circuit

affirmed. *Chow*, 993 F.3d at 144. The Securities and Exchange Commission also filed a civil lawsuit against Chow, resulting in a consent judgment barring Chow from associating with any "broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization." JA12, JA1106.

### III. Chow's unlawful conduct and criminal conviction lead to his removal from Canyon Bridge.

Unaware of Chow's crimes, Kao, Kuo, and Bingham initially stood by him, even causing Canyon Bridge to pay millions of dollars in legal fees to the law firms who represented him. JA497. After his conviction, Canyon Bridge came under intense pressure to part ways with Chow. Indeed, as he later acknowledged in the sentencing memorandum he submitted to the court presiding over his case, "business realities," including "extreme pressure from investors," required his removal. JA1053. He admitted shortly after the separation that Kao, Bingham, and Kuo had, "[w]ith heavy hearts . . . voted [him] out of the partnership," leaving him "with a debt of over $8 million in attorneys' fees owed to Canyon Bridge." JA1053–54. In connection with this vote, which occurred on October 8, 2018, Chow also *voluntarily resigned* a few days later from a variety of roles at Canyon Bridge, forfeiting all of his ownership interests in Canyon Bridge. JA 497, JA989–90, JA1034, JA1036–40. Chow also received formal notice of these actions, confirming

7

that to the extent Chow had not resigned, he had nevertheless been removed. *See, e.g.*, JA1033 & JA1772.

## IV.    Canyon Bridge is Redomiciled to the Cayman Islands.

Well over a year after Chow's conviction, the accounting firm Deloitte advised Kao, Kuo, and Bingham to "minimize the regulatory compliance cost associated with a U.S.-registered investment company" by redomiciling Canyon Bridge Capital Partners, LLC, and Canyon Bridge Fund I, LP to the Cayman Islands. JA498. In following this advice, they specifically opted to register the companies by continuation in the Cayman Islands, permitting the companies to maintain their operations without forming new entities or requiring any transfer of assets. *Id.*

## V.    Facing financial pressure, Chow initiates civil litigation seeking millions.

As a result of Chow's criminal conviction, he faces a restitution order of $1,383,477.18 and owes Canyon Bridge more than $8 million for the attorney's fees his former partners advanced when he was in criminal jeopardy. JA496–97. He has failed to honor these obligations. JA1131:9–1132:1. Instead, Chow's complaint in this action sought from Defendants-Appellees millions of dollars for purportedly hatching a plot to oust him without cause and divide his shares of Canyon Bridge among themselves. JA113–14.

A central premise of Chow's asserted claims is his allegation that when he retained Jones Day in 2016—first on behalf of China Reform and later for Canyon

8

Bridge—he also supposedly retained Kao as his personal attorney. *E.g.*, JA117–19. Chow persists in making this claim despite the two engagement letters he signed that expressly barred any Jones Day lawyer from representing any "owner, employee, parent, subsidiary or other direct or indirect affiliate" of either China Reform or Canyon Bridge. JA1014, JA1767. He has also repeated this charge despite having admitted to the absence of any engagement letter identifying Kao as his personal lawyer, as well as the lack of any invoices reflecting or payments made for Kao's alleged services in this regard. JA1229:11–15. Indeed, Chow maintains this assertion despite specifically representing to the Southern District of New York that Kao was *not* his personal attorney and could *not* speak on his behalf. Chow Letter at 2–3, *United States v. Chow*, 17-cr-00667 (S.D.N.Y. 1, 2018).

Perhaps most audaciously, Chow contends that Kao served as his personal lawyer without Chow even knowing about it until *after* he filed suit and thus alleged it for the first time in his amended complaint. JA1235:8–18 ("Q. So your original complaint, which you've now had an opportunity to review, doesn't once allege that John Kao was ever your personal attorney? A. That is correct. Q. Why not? A. Because I didn't know back then. Q. You didn't know when you originally filed your suit that John Kao had ever served as your personal attorney? A. No.").

9

## VI.    Relevant Procedural Posture.

In 2024, the District Court dismissed Canyon Bridge Management Corp. from the litigation. JA14. On December 19, 2024, the remaining Defendants moved for judgment on the pleadings. JA53. Following completion of discovery, Defendants moved for summary judgment on October 2, 2025. JA465–93. After the completion of briefing,[2] the Court held oral argument on January 20, 2026. JA819. Nearly a month later, on February 19, 2026, the United States Magistrate Judge entered a 28-page Report and Recommendation to enter summary judgment on all counts and denying as moot the motion for judgment on the pleadings. JA9–36.

The Report and Recommendation began by addressing "material in [Chow's] answering brief generated by an Artificial Intelligence . . . legal research tool, such as hallucinated cases or actual cases in which Plaintiff cites to non-existent or misquoted language." JA18. Listing each improper use of A.I. by Chow, as well as his efforts to "downplay[] the significance of the inaccurate or nonexistent material" by submitting an improper errata sheet, the Report and Recommendation declined to consider the inaccurate citations and questioned "whether Plaintiff's use of AI generated material constitutes a sufficient basis on its own to grant Defendants' motion for summary judgment." JA18–20.

---

[2] In his briefs, Chow relied extensively on citations hallucinated by his use of A.I. *See* JA600–04, JA18–20.

The Report and Recommendation opined that Chow's claims of Deceit, Constructive Fraud, Breach of Fiduciary Duty, and Aiding and Abetting all related to Kao's dubious role as Chow's personal attorney, backed only by A.I.-hallucinated authority and Chow's expressed, "subjective belief." JA24. Chow's admission that his claims accrued in October 2018, coupled with his use of hallucinated authority, independently rendered his Constructive Fraud and Breach of Fiduciary Duty claims time barred. JA24–25. Chow's Aiding and Abetting claim, which averred that Bingham and Kuo had assisted Kao in breaching his purported duty to his supposed client, failed because Chow had admitted "that Bingham and Kuo had no basis to know that [Chow] ever considered Kao to be his personal attorney." JA26–27. As noted, this theory didn't even occur to Chow until after he filed suit.

The Report and Recommendation further endorsed granting summary judgment as to Chow's Unjust Enrichment and Good Faith & Fair Dealing claims because he had waived any opposition, admitted that the claims were "based on the alleged breach of an express written contract and are identical to his breach of contract claims," and warranted no different treatment from Canyon Bridge Management Corp.'s successful motion to dismiss those claims. JA28.

Similarly, the Report and Recommendation recommended entry of summary judgment as to Chow's fraudulent transfer claims because he failed to identify any transfer or establish that he was a creditor, rather than a debtor, of Canyon Bridge.

11

JA29–30. Summary judgment as to the Breach of Contract claim was recommended because Chow sued the wrong entity, requested relief barred even if he had sued the correct entity, and could not amend his complaint to refashion his claim at summary judgment. JA31–32. The Report and Recommendation counseled entry of summary judgment as to Chow's other Breach of Fiduciary Duty claim because "no such cognizable claim exists under Delaware law." JA33–34. Finally, Chow's attempt to invoke Federal Rule of Civil Procedure 56(d) met failure because it did not satisfy the substantive criteria of the rule, as well as Chow's "lack of diligence" in pursuing the discovery at issue. JA34–35.

On March 4, 2026, Chow objected to the Report and Recommendation on all but his breach of contract claim. JA859–75. On March 25, 2026, the District Court overruled Chow's objections to the Report and Recommendation and adopted it as the final order. JA7–8. This appeal followed.

## SUMMARY OF ARGUMENT

Chow fails to demonstrate any genuine dispute of fact material to any element of his asserted claims, justifying the entry of summary judgment. Among other things, there is no genuine factual dispute with respect to the four claims anchored to Chow's alleged attorney-client relationship with Kao. The contemporaneous documents and Chow's admissions instead compel the conclusion that no such relationship existed. Two of these claims are also time-barred. Chow's fiduciary duty claims fail because indisputable record evidence—including Chow's own admissions—shows the Defendants-Appellees properly discharged their fiduciary obligations when they voted to protect the fund from the taint of his criminal misconduct by removing him. As to Chow's remaining claims, Chow either forfeited his opposition or conceded the lack of evidence to warrant presenting them to a jury.

Chow also fails to demonstrate any abuse of discretion in the District Court's denial of Chow's request for additional discovery pursuant to Rule 56(d), which he made well after the close of discovery.

13

**ARGUMENT**

## I.    STANDARD OF REVIEW

This Court generally reviews a "district court's grant of summary judgment *de novo*." *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019). Such plenary review empowers this Court to "affirm a result reached by the district court on reasons that differ so long as the record supports the judgment." *Johnson v. Orr*, 776 F.2d 75, 83 n.7 (3d Cir. 1985)*, decision supplemented,* 780 F.2d 386 (3d Cir. 1986). When engaging in this review, courts draw all reasonable factual inferences in favor of the nonmoving party. *Jorjani v. N.J. Inst. of Tech.*, 151 F.4th 135, 140 n.5 (3d Cir. 2025).

The *de novo* standard does not apply to the portions of a report and recommendation issued by a United States Magistrate Judge and adopted by a District Judge to which the losing party failed to object in a timely manner. *Brightwell v. Lehman*, 637 F.3d 187, 193 (3d Cir. 2011). Although a majority of federal circuits deem such a challenge waived, this Court permits some review but employs only the extremely deferential plain error standard "disadvantageous to the losing party." *Id.* at 193 n.7.

The Federal Rules of Civil Procedure state that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also SodexoMAGIC*, 24 F.4th at 203–04. If the evidence is instead so one-sided that a reasonable jury could not favor the nonmoving party, "the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced," summary judgment is warranted. *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996).

These basic standards do not change simply because a litigant proceeds without counsel. Although a *pro se* litigant's "pleadings are read with some leeway in light of the pro se status," that litigant must still "comply with Rule 56." *Shock v. Baker*, 663 F. App'x 248, 252 (3d Cir. 2016); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) ("[T]here are limits to procedural flexibility for pro se litigants [such] that '[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" (third alteration in original) (citation omitted)); *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("Arnett's pro se status doesn't alleviate his burden on summary judgment."); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("[A] pro se litigant does not escape the essential burden under summary judgment

15

standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").

Separate from the basic substantive question about the propriety of summary judgment, this Court reviews a district court's denial of relief for further discovery pursuant to Federal Rule of Civil Procedure 56(d) for abuse of discretion. *See Murphy v. Millenium Radio Grp. LLC*, 650 F.3d 295, 310 (3d Cir. 2011) (considering Rule 56(f), which was restyled as Rule 56(d)); *Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, 490 F. App'x 492, 500 (3d Cir. 2012); *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (considering a district court's refusal to consider a Rule 56(d) affidavit). This is a high standard; a plaintiff demonstrates an abuse of discretion only by "show[ing] that the District Court's decision was arbitrary, fanciful or clearly unreasonable." *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 148 (3d Cir. 2013) (quoting *Moyer v. United Dominion Indus., Inc.,* 473 F.3d 532, 542 (3d Cir. 2007)).

## II.    Chow Fails To Demonstrate Any Genuine Factual Dispute About The Alleged Attorney-Client Relationship Between Him And Kao.

Chow asserts that "the documents on which the District Court principally relied" to grant summary judgment on all claims arising from his alleged attorney-client relationship with Kao "do not rule out an implied attorney-client relationship." App. 21. In making this argument, Chow appears to misunderstand and effectively invert the governing standard, which requires him to produce evidence showing a

16

genuine dispute of fact once the moving party produces evidence in its favor. *See S.E.C. v. Hughes Cap. Corp.*, 124 F.3d 449, 452 (3d Cir. 1997) ("The party challenging the motion for summary judgment must be able to produce evidence that, 'when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.'" (quoting *Kline v. First W. Gov't Sec.*, 24 F.3d 480, 485 (3d Cir. 1994)).

The record in this case discloses that Chow executed two letters in 2016 engaging Jones Day's legal services on behalf of China Reform and Canyon Bridge and that each disclaimed the firm "representing any owner, employee, parent, subsidiary or other direct or indirect affiliate" of either entity. JA1014, JA1767. The record also includes Chow's admission that after Kao left Jones Day, Kao served as the fund's general counsel, and his "fiduciary obligations ran to the client, Canyon Bridge." JA1262:11–16.[3] Chow specifically conceded that Kao "was not general counsel for Ben Chow." JA1243:12–17. Consistent with this understanding, Chow independently represented to the Southern District of New York that Kao was "the

---

[3] Chow attempts to avoid the consequences of the admissions he made in deposition, characterizing the Court's consideration of his testimony as engaging in improper credibility determinations. App. 27–28. This is an evasion the Court should reject. It is axiomatic that a "[p]laintiff's deposition testimony must be taken at face value at the summary judgment stage." *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 816 (N.D. Ill. 2014); *cf. Cadet v. First Liberty Ins. Corp.*, No. 1:20-CV-3159-MLB, 2022 WL 671546, at *7 (N.D. Ga. Mar. 7, 2022) (rejecting a plaintiff's similar effort "to avoid the admissions in her deposition" on summary judgment).

17

lawyer for the company, and does not represent its officers, directors or employees," and certainly "not Mr. Chow in his personal capacity." Chow Letter at 2–3, *United States v. Chow*, 17-cr-00667 (S.D.N.Y. Apr. 1, 2018). Chow also never formally engaged, received any invoices from, or paid Kao as his personal lawyer. JA1229:11–15.

The operative question for this Court is whether Chow produced evidence that could form a genuine basis for proving this relationship at trial. *See Hughes Cap. Corp.*, 124 F.3d at 452. The record demonstrates that Chow didn't come close. Instead, Chow testified that Kao purportedly served as his personal lawyer without his even knowing about it until years later, after he filed suit. JA1235:8–18. In addition to this startlingly late self-serving assertion, Chow merely points the Court to fragments of unauthenticated WeChat messages about which he invites rank speculation to insist that a genuine factual dispute exists.

In particular, Chow seizes on a solitary, August 2018 exchange in which he allegedly said about his presentence report to Kao, "Not sure if I can share this with others outside of my lawyers." JA1549, App. 26. This language plainly expresses caution and concern on Chow's part about sharing the document, further corroborating all the other evidence that he lacked an attorney-client relationship with Kao. And yet Chow persists by reciting the very next words in the message, an unintelligible sentence fragment that reads in full: "You can still my lawyer."

18

JA1549, App. 26. Chow maintains that this incomprehensible phrase somehow reflected his awareness and "confirmed an attorney-client role" (App. 9), never once bothering to square it with either his proclaimed ignorance of such a role until years later or his tactical ploy before the District Court of "add[ing] an additional word to the quoted statement" (JA23 n.13).

At best, this dubious evidence renders Chow's claim of a personal attorney-client relationship with Kao "one of pure speculation or conjecture," and therefore cannot serve to overturn the entry of summary judgment. *Fedorczyk*, 82 F.3d at 75.[4] California law makes the existence of an attorney-client relationship a legal question answered by resorting to objective facts.[5] *Responsible Citizens v. Superior Ct.*, 16

---

[4] Chow refers to another unauthenticated WeChat message in which Kao purportedly states, "Yes. That whole episode." JA1582. It is unclear to what this message even refers, and it makes no reference to Kao acting as Chow's personal attorney, rendering "the matter . . . one of pure speculation or conjecture" that fails to support reversal of summary judgment. *Fedorczyk*, 82 F.3d at 75. Similarly, Chow cites another WeChat message in which Kao expressed that, in retrospect, "I should have told Roman to roll up his sleeves and get on your defense team." JA1577. Chow identifies this offhand remark as proof of Kao's "standing to assign a Jones Day litigation partner to Plaintiff's criminal defense team." App. 27. It isn't. Indeed, one could posit that "all manner of things *could have* occurred, in hindsight, but such speculation from Plaintiff . . . does not suffice to meet its burden in a motion for summary judgment." *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 223 (S.D.N.Y. 2009) (granting defendants' motion for summary judgment), *aff'd sub nom. RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 F. App'x 337 (2d Cir. 2011).

[5] As the District Court noted, the parties briefed certain issues as if governed by Delaware law and others by California law—a choice made by Chow, and "questioned," but followed, by Defendants-Appellees. JA17 n.10. With "no reason to unsettle this agreement," this Court should do the same. *Schiavone Constr. Co. v.*

Cal. App. 4th 1717, 1733 (1993); *see also, e.g., Fink v. Montes*, 44 F. Supp. 2d 1052, 1059 (C.D. Cal. 1999) (summarizing the conflict of interest factors). In contrast, an individual's subjective beliefs are irrelevant. In particular, "a plaintiff cannot unilaterally establish an attorney-client relationship, and [his] hindsight 'beliefs' that such a relationship existed are thus legally irrelevant." *Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007).

Chow's other arguments also fall flat. For example, he makes much of the fact that the Canyon Bridge engagement letter was "backdated" to August 10, 2016. App. 18–22. But Chow cites no authority that undercuts the legal or evidentiary significance of a document that two sophisticated parties elect to date to reflect the commencement of their agreement, although it was only later reduced to writing. Moreover, his assertions conflict with his own conduct, including acting on behalf of Canyon Bridge before it had been formally organized. *See, e.g., Chow*, 993 F.3d at 130 (recounting that on "August 22, [2016], the day after China Reform's exclusivity period expired, Chow informed Lattice that he was leaving China Reform and starting his own United States-based fund. Chow indicated that his new fund—Canyon Bridge—would submit a proposal to Lattice. [The Lattice CEO's] initial understanding was that Canyon Bridge ***was to be*** a private-equity firm"

---

*Time, Inc.*, 847 F.2d 1069, 1076 n.3 (3d Cir. 1988) (allowing consensus of parties and lower courts about the choice of law to control).

(emphasis added)). Finally, Chow's decision to sign the backdated agreements reinforces the conclusion that Kao was not his personal lawyer; after months of receiving Kao's services for Canyon Bridge, Chow signed the agreement *reconfirming* that those services were not provided to him in his personal capacity.

The handful of communications recommending criminal appellate counsel (JA1522), sharing news of an insider trading case with Chow (JA1573), and the ensuring Chow's engagement letter was consistent with Canyon Bridge's attorney fee advances to Chow (JA1524–25) do not reflect legal advice or representation. Similarly, Chow's contention that "[t]he record establishes extensive legal conduct by Mr. Kao" constitutes nothing more than a conclusion bereft of supporting evidence. App. 24. To be sure, Chow contends that Kao "admitted under oath" that he talked to Chow's criminal defense counsel and offered "tactical reorientations" (*id.*), but the record reveals neither the claimed admission (JA1808–09) nor any provision of advice on legal strategy (JA1577).

Tacitly conceding the inability of this record to reverse summary judgment, Chow suggests that still other evidence demonstrates his personal attorney-client relationship with Kao. App. 26–28. He thus mentions an alleged oral statement by Kuo, evidenced only in Chow's declaration, that Kao "had acted both as attorney and as a beneficiary in drafting the Canyon Bridge fund-formation documents." JA1879. Even if one credits this statement, it fails to identify whom Kao represented

as an attorney. Again, if "the probabilities are at best evenly balanced," summary judgment is warranted. *Fedorczyk*, 82 F.3d at 75 (quoting Restatement (Second) of Torts § 433B (1965)).

Finally, Chow fails to support his claim that Defendants-Appellees Bingham and Kuo aided and abetted any breach of fiduciary duty. Her merely states that this claim "relies on Mr. Kao's breach as the predicate." App. 28. As the trial court explained, Chow's admission that he lacked any evidence that either Bingham or Kuo "actually formed a belief that [Kao] was [Chow's] personal lawyer" contradicts—and forecloses—this assertion on appeal. JA27.

For these reasons, the District Court properly entered summary judgment on Counts I, II, IV and V.

## III.    Chow's Claims Against Kao For Constructive Fraud And Breach Of Fiduciary Duty Are Time-Barred.

Even if Chow could establish an attorney client-relationship between himself and Kao, the limitations periods governing Counts II (constructive fraud) and Count IV (breach of fiduciary duty) bar these claims. Specifically, California Code of Civil Procedure § 340.6(a) prescribes a one-year period within which to file a claim for the wrongful acts or omissions "of an attorney arising in the performance of professional services." This statute of limitations applies when the claim "depend[s] on proof that an attorney violated a professional obligation—that is, an obligation the attorney has *by virtue of* being an attorney—in the course of providing

22

professional services." *Lee v. Hanley*, 61 Cal. 4th 1225, 1229 (2015). Such claims include breaches of any fiduciary duty that an attorney owes his client. *Sprengel v. Zbylut*, 241 Cal. App. 4th 140, 155 (2015); *see also ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1037 (9th Cir. 2016).

Chow's pleading choices identify his claims for constructive fraud and breach of fiduciary duty against Kao as arising from the fiduciary duties Kao allegedly owed Chow as his attorney. Indeed, Chow specifically alleged that "Kao's [sic] breached his fiduciary duties imposed on him pursuant to California law ***to his client*** . . . . The ***duty of a lawyer*** to given [sic] undivided and unquestioned loyalty to ***his or her client*** is the *sine qua non* of what makes a faithful lawyer." JA149–50 (emphases added). Chow further alleged that "Kao's actions constitute a breach of Kao's fiduciary duty to Chow ***as Chow's attorney***." JA152 (emphasis added). Because these claims depend on proof that Kao violated a professional obligation owed to Chow as his purported client, the one-year statute of limitations applies. There is no dispute that Chow filed his suit more than a year after his October 2018 termination from Canyon Bridge, barring these claims. JA24.

On appeal, Chow advances three arguments, all of which fail. ***First***, Chow argues that his claims depend on obligations beyond those owed by Kao to Chow as his lawyer. This assertion directly contradicts his argument that "[t]he existence of an attorney-client relationship is a threshold element common" to these claims. App.

23

28. Despite this concession, Chow maintains that Kao had also drafted the formation documents for Canyon Bridge on which the Defendants-Appellees relied to divest Chow of his ownership interests following his criminal misconduct. App. 30–31. But this is not what Chow alleged, and "absent exceptional circumstances, issues not raised before the district court are waived on appeal." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007).

 ***Second***, Chow argues that even if the one-year limitations period applies, it should run from his July 2021 deadline to file a cert petition on his criminal appeal. App. 33. Chow forfeited this argument when he elected to use A.I. to misquote and misrepresent *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739 (1998) to make this point before the District Court.[6] JA19, JA25. Because Chow failed to provide any genuine legal support supporting this argument below, he has waived it. *See, e.g.*, *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (observing that an appellant's failure to present a legal argument in support of an issue waives that issue on appeal and the court of appeals need not address it); *Travelers Indem. Co. v. Pauline*, No. 1:07-CV-00538, 2008 WL 1774034, at *3 (M.D. Pa. Apr. 15, 2008) (noting that a party who "offers no legal citation in support of his . . . argument . . . is deemed to waive it").

---

[6] On appeal, Chow implies that the District Court analyzed *Jordache* and did so incorrectly (App. 34), but this is simply inaccurate (JA18, JA25).

Even if the Court considered Chow's argument, his severance from Canyon Bridge in October 2018 effectuated the only purported injury necessary to trigger the accrual of his claims. *See, e.g.*, JA510, JA530. Chow's departure, and his resulting loss of equity and income at that time, were more than sufficient to constitute the "loss or injury legally cognizable as damages" for any viable claim to accrue. *Jordache*, 18 Cal. 4th at 743; *see also Village Nurseries v. Greenbaum*, 101 Cal. App. 4th 26, 42 (2002) (noting that "a plaintiff need not suffer a *complete* loss of a right or reach final adjudication of an issue to sustain actual injury pursuant to . . . section 340.6" (citation omitted)).

The Second Circuit's July 2021 affirmance of Chow's conviction had no impact on the accrual of his claims. *Toffel v. Nationwide Mut. Ins. Co.*, No. 2:15-CV-01669-KOB, 2017 WL 3425532 (N.D. Ala. Aug. 9, 2017) is instructive. That case confronted the claims brought by the trustee for a bankrupt company that had been driven to the brink of insolvency by significant state court judgments arising from its violation of a dram shop law. *Id.* at *1. The trustee sued Nationwide, the company's insurance carrier, advancing several, alternative theories arising from a "dispute over insurance coverage." *Id.* Concerned about the operation of "the applicable two-year statute of limitations," the trustee argued that "his claims did not accrue until the affirmance of the state court judgments by the Alabama Supreme Court." *Id.* at *3. The court rejected this argument, explaining that all the claims

"depend on Nationwide's initial rejection of coverage under the policy," which had occurred more than two years prior to commencement of the suit. *Id.*

*Third*, Chow argues that the discovery rule should toll the accrual of his claims because he first received in July 2021 documents detailing the "mechanics" of the board action divesting his ownership from and redomiciling Canyon Bridge. App. 35. To be sure, the applicable statute specifies a limitations period of "one year after the plaintiff discovers, *or through the use of reasonable diligence should have discovered*, the facts constituting the wrongful act or omission." Cal. Code Civ. Proc. §340.6(a) (emphasis added). Chow does not explain how his purported later-in-time awareness of the precise "mechanics" of his departure (setting aside, of course, his own resignation letters) or anything else could have rendered him unaware of his alleged injuries.[7] *See, e.g.*, JA1034–40, JA144–45. Significantly, he also completely fails to identify any record evidence reflecting diligence on his part to learn about the referenced "mechanics," therefore waiving this argument. *See Kozakiewicz*, 1 F.3d at 182.

---

[7] In advancing this argument, Chow for the first time seems to contend that the claims presented by Counts II and IV overlap with the fraudulent transfer claims embraced by Counts VII and VIII. As with so much else said in his appeal, this notion was never raised below. It also makes no sense, as the facts alleged to support Chow's fraudulent transfer claims are temporally distinct from his imagined attorney-client relationship with Kao.

**IV.    Chow's Breach Of Fiduciary Duty Claim Misapprehends The Duty Owed And Honored By Defendants-Appellees Kao, Kuo And Bingham.**

Chow asserts that Kao, Kuo, and Bingham owed him fiduciary duties and violated them by causing Chow's ownership interests in Canyon Bridge to be forfeited. App. 36. Chow contends that these fiduciary duties arose from the roles occupied by Kao, Kuo, and Bingham "as members and managers of the Canyon Bridge LLC entities." *Id.* This is different from the position he advanced below, in which he anchored his fiduciary duty claim to the status of Kao, Kuo and Bingham "[a]s directors." JA160–61; *see also, e.g.,* JA1481–83. Of course, it is well settled that corporate directors owe fiduciary duties only to a corporation and its stockholders as a whole, not individual shareholders. *See, e.g.*, *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007); *Klassen v. Allegro Dev. Corp.*, No. 8626–VCL, 2013 WL 5967028, at *11 (Del. Ch. Nov. 7, 2013).

Chow does not seriously challenge this authority. He makes a passing reference to *Gheewalla*, asserting that "the District Court's reliance on [that case] conflated two distinct fiduciary-duty regimes." App. 36. But then he ultimately agrees with the very principle for which Defendants-Appellees and the District Court cited it, namely the principle that "directors owe their fiduciary obligations to the corporation and its shareholders," rather than to any individual personally. App. 41 (quoting *Gheewalla*, 930 A.2d at 99). Confusingly, Chow attempts to suggest that

*Gheewalla* is somehow in tension with the law announced in *Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. 2012). *See* App. 41–42. But *Feeley* embraces the same principle. 62 A.3d at 668 (noting that "members of a board of directors of a Delaware corporation," as a matter of law, "owe fiduciary duties of loyalty and care to the corporation," which they must exercise "in the good faith pursuit of maximizing the value of the corporation for the benefit of its residual claimants, *viz.*, the stockholders" (citations omitted)).

Chow appears to emphasize *Feeley* because the court in that case declined to dismiss certain claims of minority stakeholders in a Delaware limited liability company against the individual who controlled its majority stakeholder. *See, e.g.,* 62 A.3d at 667 (noting that while "Feeley can be sued by NHA for breach of fiduciary duty in his capacity as the party who controls AK–Feel, he cannot be sued in that capacity for breach of the duty of care"). But Chow fails to mention, and perhaps to comprehend, some significant factual differences between that case and this one. *See, e.g., id.* at 656 (identifying "Feeley's service in his capacities as President and CEO of Oculus"—the limited liability company in question—as being memorialized in an employment agreement that rendered the "claim for breach of the fiduciary duties owed by Feeley in those capacities . . . subject to arbitration").

Whether the law ever permits one shareholder to sue another for certain breaches of fiduciary duty, Chow has utterly failed to identify law that even suggests

28

one can do so in the circumstances presented in this case. In particular, Chow cites no authority that even hints at requiring a limited liability company's managers to elevate above the interests of the company the individual interests and financial wellbeing of just one shareholder, particularly one convicted of criminal activity that jeopardizes the company. To the contrary, even the discussion in *Feeley*—the case on which he relies so heavily—emphasizes the importance of consistency between the fiduciary duties owed to a corporation and any duties that one shareholder may owe another. *See, e.g., id.* at 670–71 (collecting cases).[8]

Chow points to no record evidence that warrants reversal of summary judgment on this claim. Indeed, it is hard to imagine how he could do so, given his admission that "extreme pressure from investors" and "business realities" warranted his removal following his conviction for securities fraud. JA1053–54. Chow's misguided focus on the Court's purported failure to consider the duties purportedly owed and breached by Kao, Kuo, and Bingham as "managers" (App. 38–42), changes nothing. Because Chow relied below on A.I. hallucinations of case law to

---

[8] In the event of any actual tension, "[t]he business judgment rule protects corporate managers from judicial interference with their informed, good faith business decisions." *Freedman v. Redstone*, 753 F.3d 416, 427 (3d Cir. 2014), *overruled on other grounds by In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250 3d Cir. 2024) (en banc). The only exception to this strong presumption exists if "a plaintiff presents evidence to the contrary." *Id.* Chow has failed to do so.

advance this argument below (JA18–20), the Court should deem it forfeit. *See, e.g.*, *Kozakiewicz*, 1 F.3d at 182; *Travelers Indem. Co.*, 2008 WL 1774034, at \*3.

## V.    The Remaining Claims Also Warranted Summary Judgment.

Chow contends that the District Court improperly granted summary judgment on his claims for unjust enrichment, breach of the implied covenant of good faith and fair dealing, statutory fraudulent transfer, common law fraudulent transfer, and breach of contract. He asserts that the District Court incorrectly treated these claims as "collaps[ing] into the rulings on the predicate counts" and that each claim should survive on the merits. App. 46–51. Because this Court generally enjoys plenary review in evaluating the propriety of entering summary judgment in this case, Chow's mischaracterization of the District Court's analysis is beside the point. There is simply no basis for reversing the judgment, as explained below.

### A.    Chow's Claims For Unjust Enrichment And Breach Of The Implied Covenant Of Good Faith Fail As A Matter Of Law.

As a preliminary matter, the District Court determined that Chow had waived his opposition to the motion for summary judgment regarding his unjust enrichment claim because he had failed to oppose the earlier-filed motion for judgment on the pleadings seeking dismissal of this claim. JA28, JA556. The District Court also refused to consider Chow's argument that his unjust enrichment claim was somehow distinct from his breach of contract claim based on his reliance on fabricated case law. JA19, JA28. Because Chow does not even address these findings in his appeal,

30

he effectively concedes the points. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir.1991) (plurality))).

Chow's unjust enrichment claim fails independently for the reason that "[a] claim for unjust enrichment is not available" under Delaware law "if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009). Chow attempts to recharacterize the basis for his unjust enrichment claim as his divestment of his ownership interests in Canyon Bridge (App. 48), but the record reflects his admissions that this precise conduct also forms the basis for his breach of contract claim. JA1287:14–21, 1329:9–15, 1340:20–1341:4. Regardless, Chow's unjust enrichment claim is separately foreclosed because his forfeiture of ownership in Canyon Bridge is squarely governed by the terms of the Operating Agreement and other corporate governance documents. JA891–1012.

Summary judgment also remains justified for Chow's claim asserting a breach of the implied covenant of good faith and fair dealing. As noted, the trial court dismissed this claim on Canyon Bridge Management Corp.'s motion, which addressed grounds applicable to the Defendants-Appellees. JA328–29. Moreover,

although the trial court permitted Chow to amend his complaint, he never cured the deficiencies with his breach of the implied covenant of good faith and fair dealing claim. JA332–33. Accordingly, the District Court declined to allow Chow to "revive this claim" in his answering summary judgment brief. JA28; *see also Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (citation omitted).

Chow (through his counsel at the time) also admitted that this claim fails as a matter of law because it is subsumed within the breach of contract claim. JA285:2–11 (acknowledging the duty of good faith and fair dealing is "read . . . into every agreement"). Chow's argument on appeal likewise reveals that this claim stems from the contractual breach claim. App. 47. He attempts to avoid this conclusion but provides no intelligible explanation to reach a different result.[9] *Id.* at 46–47. Chow also does not address his prior admissions that this claim duplicates his contract claim, again effectively conceding the point. *Laborers' Int'l Union*, 26 F.3d at 398.

---

[9] Chow also claims that the implied covenant of good faith and fair dealing stems from 6 Del. C. § 18-1101(c). App. 47. Chow cites no authority for this proposition, and the statute he cites only states that the implied covenant cannot be eliminated by an LLC agreement. Moreover, Chow misquotes the statute. *Compare* App. 47 ("may not be eliminated by the . . . limited liability company agreement) *with* § 18-1101(c). It is unclear whether this is a mere scrivener's error or yet another hallucination from Chow's prolific use of generative A.I.

**B.      Chow's Claims For Statutory Fraudulent Transfer And Common Law Fraudulent Transfer Fail As A Matter Of Law.**

To prevail on either a fraudulent transfer claim under the California Voidable Transfer Act ("CUVTA") or a common law fraud claim based on such a transfer, one must present evidence of a transfer that has actually occurred. Cal. Civ. Code § 3439.04(a) (CUVTA); *see Frady v. New Peaks LLC*, No. 23-cv-0158-AGS-JLB, 2024 WL 1023024, at *6 (S.D. Cal. Mar. 8, 2024) (equating the elements for a fraudulent transfer under the CUVTA to the common law). Both claims also require "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1); *see also Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780 MHP, 2008 WL 4450328, at *6 (N.D. Cal. Sept. 29, 2008). Chow failed to produce evidence of either element and accordingly could neither avoid nor reverse the entry of summary judgment.

### i.     *Chow Fails To Show A Genuine Dispute Regarding A Transfer.*

The record is undisputed that Canyon Bridge's redomiciliation in the Cayman Islands involved no transfer of assets. The Cayman Companies Act provides for redomiciliation that "shall not operate . . . to affect the property of the registrant" or "the rights, powers, authorities, functions and liabilities or obligations of the registrant or any other person." Cayman Companies Act § 202(3)(g)(i). Chow ignores the effect of this statute and asserts without any contrary legal or evidentiary support that "the redomiciliations qualify as 'transfers.'" App. 48. By simply making

33

this assertion without any legal or evidentiary support, Chow fails to carry his burden. *See Hughes Cap. Corp.*, 124 F.3d at 452.

### ii. Chow Fails To Show A Genuine Dispute About Fraudulent Intent.

Even if the redomiciliations involved a transfer (they do not), the record shows that the redomiciliations occurred because Deloitte advised Canyon Bridge that doing so would reduce the costs of regulatory compliance. *E.g.*, JA1018–32; JA1508. Chow has failed to identify any record evidence that even suggests the redomiciliations were animated by an intent to hinder or otherwise shield Canyon Bridge's assets from Chow. Ignoring this reality, Chow nevertheless insists that the record includes "badges of fraud," such as (i) a transfer to an insider, (ii) retention of possession or control over Canyon Bridge, (iii) the occurrence of the transfer while he threatened litigation, and (iv) some purported effort to conceal the transfer from him. App. 49. Chow has forfeited all but (at most) the second point, as he did not raise these other arguments below. JA521. Regardless, none of these issues present a genuine dispute of material fact.

As previously noted, no transfer is associated with the redomiciliations. Chow attempts to manufacture a dispute about this truth by pointing to the redistribution of his ownership interests after his termination, but that occurred in October 2018, months before the redomiciliations, which happened in May 2019. App. 6–7; JA13, JA146–47. Chow's observation that the Defendants-Appellees retained control over

Canyon Bridge entities only serves to emphasize the point that the redomiciliation had no material impact on their operations. Chow similarly undermines his own position by asserting that the 2019 redomiciliation occurred while litigation was threatened—something he doesn't even try to harmonize with other arguments (addressed above) that his claims only accrued and he was only injured in 2021. Finally, Chow's characterization of the transfer as having been "concealed" is utterly bereft of evidentiary support.

### iii.    *Chow Fails To Show A Genuine Dispute That He Is A Creditor.*

The record is likewise devoid of evidence suggesting that Chow is a creditor with a legal claim to any of Canyon Bridge's funds. A creditor is a person with a claim, and a claim is "a right to payment." Cal. Civ. Code § 3439.01(b) & (c). Chow contends that he qualifies because he is purportedly owed "continuing partner comp," based on a few remarks that appear in unauthenticated, informal WeChat messages dating back to July 2020. JA1583, 1587. This fails to present a genuine dispute of fact, particularly given the record evidence that includes Chow's own admission of indebtedness to Canyon Bridge for having advanced millions of dollars to pay his attorney's fees. *See* JA1054 & JA1502.

### C.    The District Court did not Commit Plain Error in Granting Summary Judgment on Chow's Breach of Contract Claim.

Chow failed to object to the Report and Recommendation regarding the entry of summary judgment on his breach of contract claim against Canyon Bridge Capital

Partners, LLC. *See* JA6 ("WHEREAS, Plaintiff . . . does not object . . . to the conclusion that Count IX (the breach of contract claim) fails as a matter of law"). Accordingly, the Court reviews the entry of summary judgment as to this claim for plain error. *Brightwell*, 637 F.3d at 193 n.7. In such a "disadvantageous" position, Chow has an uphill climb. *Id.* Chow must contend with having previously conceded that he sued the wrong entity under provisions absent from the relevant contract. JA31 & JA1304:5–23. Although he now claims "clerical error" (App. 50), at no point did Chow ever previously attempt to make a correction. Chow also contends that "which entity was the operative contracting party" under the agreements about which he sued "is itself disputed." App. 50. But Chow never elaborates about this purported dispute and therefore waives his argument. *Kozakiewicz*, 1 F.3d at 182.

Rather than identify any plain error in the record, Chow attempts to revive the claim on appeal by picking different contractual provisions never pled as part of his breach of contract claim and making entirely new arguments based on those provisions. He thus argues that there was no "final judgment" giving rise to the "Disabling Conduct" referenced in the Fund LP Agreement until the exhaustion of his appeals. App. 50. Setting aside the novelty of this argument, it ignores the reality that a final judgment was the *predicate* to his appeal, rather than its outcome. *See* 28 U.S.C. § 1291 (stating that courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the Unted States"); *see also Firestone Tire*

36

*& Rubber Co. v. Risjord,* 449 U.S. 368, 374 (1981) (holding that the phrase "final decision" means that "a party must ordinarily raise all claims of error in a single appeal *following final judgment* on the merits") (emphasis added).

Chow also argues that Canyon Bridge could not show any "[d]*amages*" from his Disabling Conduct because his criminal proceedings did not adjudicate that issue. App. 51. Chow's cramped understanding of damages ignores the relevant contract language that broadly includes "counsel fees and expenses incurred in connection with the preparation for or defense or disposition of any investigation, action, suit, arbitration or other proceeding . . . whether civil or criminal." JA941. Chow's argument likewise ignores his own concession during sentencing that Canyon Bridge advanced him millions in counsel fees and expenses that he had to repay. JA1054.

There is also no genuine dispute as to which entities are governed by which agreements. Sections 7.04 and 11.02 of the Fund LP Agreement do not establish obligations for Canyon Bridge Capital Partners, LLC as a matter of law. The plain text of the contract is conclusive. Moreover, no actual provision of the Operating Agreement is identified in the operative pleadings, meaning that it cannot form the basis of a cognizable breach of contract claim. JA159–60. Chow appears to argue that his breach of contract claim now includes a breach of Section 6.5(c) of the Operating Agreement. App. 51. But this is also new, as Chow never previously

37

identified it as a basis for his breach of contract claim. JA159–60. Chow cannot manufacture plain error by trying to amend his complaint for the first time on appeal.

## VI. The District Court did not abuse its discretion when it denied Chow's Rule 56(d) request.

When confronted with the motion for summary judgment below, Chow asked the trial court for additional discovery, attempting to invoke Federal Rule of Civil Procedure 56(d) in his answering brief. JA524. It was too late to do so, as "[r]elief under Rule 56(d) 'is not available when summary judgment motions are made after the close of discovery.'" *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, Nos. 12–1492, 08–08, 2014 WL 2738224, at \*13 (D.N.J. June 17, 2014) (collecting cases). That reality alone should resolve this assignment of error.

Even if this Court were inclined to be more permissive, it has previously held that such relief requires a plaintiff to show why he "cannot present facts essential to justify [his] opposition," usually with a declaration indicating the "particular information . . . sought," how that information "would preclude summary judgment," and "why it has not been previously obtained." *Shelton*, 775 F.3d at 568 (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir. 1988)). The District Court did not abuse its discretion when it rejected the sufficiency of Chow's declaration. Indeed, rather than articulate certain facts that might justify Rule 56(d) relief, Chow attempted to manufacture discovery disputes in his opposition to summary judgment. *See, e.g.*, JA534.

Chow contended that Defendants-Appellees had "obstructed discovery," despite a record disclosing their production of tens of thousands of documents according to standard ESI procedures requested by Chow himself. He also complained about the Defendants-Appellees' refusal to "authenticate WeChat" messages for which they had no records, purportedly withholding certain emails for which Chow had never filed a motion to compel, and the supposed failure to "produce Kao and Kuo for depositions" for which he did not even serve notices. JA524.[10]

Chow persists in maintaining that the production of documents in Tag Image File Format ("TIFF") with standard load files somehow inhibited his review. *E.g.*, JA528. But the production was entirely consistent with expectations for discovery in the forum. *See* D. Del. Default Standard for Discovery, Including Discovery of Electronically Stored Information, at 6 (stating that "parties shall produce their information in the following format: single page TIFF images and associated multi-

---

[10] Chow's declaration revealed that Defendants-Appellees agreed to make Kao and Kuo available for deposition, but Chow did not like that they were available only in mainland China. JA531. Although Chow claimed that he had provided authorities that purportedly required the witnesses to appear in Taiwan, those authorities were (again) A.I. hallucinations. JA561 n.8. Even if he had been correct on the law, he chose not to notice their depositions, failing to trigger any obligations for them to appear.

page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.").

Moreover, Chow's declaration failed to identify "what *particular* information [wa]s sought" or how that information "would preclude summary judgment." *Shelton*, 775 F.3d at 568. Nor did Chow's declaration explain why Chow could not have brought this discovery dispute to the trial court prior to the close of discovery, or why he could not have sought an extension of discovery if he believed something was missing. Courts routinely deny additional discovery requests when Rule 56(d) declarations do not explain why a plaintiff did not pursue discovery disputes or reach out to the trial court about those disputes prior to the close of discovery. *E.g.*, *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989); *Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989); *Arias v. Brenneman*, No. 22-3458, 2023 WL 8646268, at *2 (3d Cir. Dec. 14, 2023).

The District Court ultimately determined that Chow had "fail[ed] to explain why the discovery he now seeks was not timely pursued" prior to the close of discovery. JA34. Chow provides no reason that this determination constitutes an abuse of discretion.

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the district court's

grant of summary judgment and denial of relief pursuant to Rule 56(d).

Respectfully submitted,

Adam R. Fox                              *s/ Jesse L. Noa*
Jesse Taylor                             Jesse L. Noa (Del. Bar #5973)
Chassica Soo                             Tyler E. Cragg (Del. Bar #6398)
SQUIRE PATTON BOGGS (US) LLP   POTTER ANDERSON & CORROON LLP
555 South Flower Street                  1313 N. Market Street, 6th Floor
31st Floor                               Wilmington, Delaware 19801
Los Angeles, California 90071            (302) 984-6000
(213) 624-2500

                                         *Counsel for Defendants-Appellees*

Dated:  July 1, 2026

41

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system for filing and served the following via ECF:

Benjamin Bin Chow
Pro Se Plaintiff-Appellant
6883 Goldpine Ct.
San Jose, California 95120
818-298-2225
citchow@outlook.com

*s/ Jesse L. Noa*
Jesse L. Noa (Del. Bar #5973)

## COMBINED CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,451 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in 14-point, proportionately spaced, Times New Roman font, using Microsoft Office 365.

This document complies with the requirements of 3d Cir. L.A.R. 31.1(c) (2011) because the text of the electronic brief is identical to the text in the paper copies and because a virus detection program Microsoft Windows Defender Version 1000.29554.1001.0 has been run on the file and no virus was detected.

This document complies with 3d Cir. L.A.R. 28.3(d) (2011) because at least one attorney whose name appears on this brief is a member of the bar of this court or has filed an application for admission pursuant to 3d Cir. L.A.R. 46.1 (2011).

*s/ Jesse L. Noa*
Jesse L. Noa (Del. Bar #5973)